IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RODNEY ALVERSON, #132431, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:16-CV-928-MHT |
| ) | |
| JEFFERSON DUNN, et al., ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This cause of action is pending before the court on a 42 U.S.C. § 1983 complaint filed by Rodney Alverson ("Alverson"), an indigent state inmate incarcerated at the Draper Correctional Facility.  In this complaint, Alverson challenges actions taken against him by correctional officials and an alleged lack of treatment provided by medical personnel during October and November of 2016 while confined at Draper.  Upon initiation of this case, Alverson sought issuance of a preliminary injunction requiring the defendants "to have a proper medical provider properly examine the plaintiff's neck and back for injur[ies] and such injur[ies] repaired or treated" as he has not received adequate medical treatment from the prison's health care providers.  *Doc. No. 1* at 15.

On December 1, 2016, the court entered an order directing the defendants to show cause why Alverson's motion for preliminary injunction regarding medical treatment should not be granted.  *Doc No. 5*.  The correctional defendants to whom Alverson addressed his request for preliminary injunctive relief, Jefferson Dunn and Edward Ellington, filed a response to this order on December 15, 2016, supported by affidavits, in which these defendants maintain that they have

no medical training and, therefore, all decisions regarding medical treatment are made by the medical professionals under contract with the Alabama Department of Corrections. *Doc. No. 13* at 2-3. On January 10, 2017, the medical defendants filed a special report supported by relevant evidentiary materials, including Alverson's medical records, wherein they address the claims on which Alverson bases his request for preliminary injunctive relief. *Doc. No. 29.*

Upon review of the motion for preliminary injunction filed on November 30, 2016, the responses thereto filed by the defendants and well-settled law, the court concludes that such motion is due to be denied.

## II.  STANDARD OF REVIEW

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). This court may grant a preliminary injunction only if Alverson meets each of the following prerequisites: (1) a substantial likelihood of success on the merits; (2) a substantial threat irreparable injury will occur absent issuance of the injunction; (3) the threatened injury outweighs the potential damage the requested injunction may cause the non-moving parties; and (4) the injunction would not be adverse to the public interest. *Id.* at 1329; *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001); *Tefel v. Reno*, 180 F.3d 1286, 1295 (11th Cir. 1999); *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir. 1998); *Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983). "In this Circuit, [a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to the four requisites." *McDonald's*, 147 F.3d at 1306 (internal quotation marks omitted) (quoting *All Care Nursing Serv., Inc. v. Bethesda Mem. Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989)); *see Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir. 1975) (holding that a grant of preliminary

injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion).  The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's request for injunctive relief, regardless of the party's ability to establish any of the other requisite elements. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994); *see Siegel v. Lepore,* 234 F.3d 1163, 1176 (11th Cir. 2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper").  "The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1284 (11th Cir. 1990); *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001).

### III.  DISCUSSION

In their response to the motion for preliminary injunction, defendants Dunn and Ellington assert that all decisions regarding inmate medical treatment are made by the prison system's contract health care providers.  As for the medical defendants, they adamantly deny violating Alverson's constitutional rights and maintain that Alverson has received adequate treatment while at Draper.  In his affidavit, defendant Justin Oden, a Certified Registered Nurse Practitioner, addresses the claims presented by Alverson as follows:

> I am aware that Mr. Alverson alleges that he did not receive appropriate medical attention and medications since complaining of pain in his back beginning on October 18, 2016.
>
> I have attached hereto, in chronological order, Mr. Alverson's complete medical chart for 2016.
>
> The medical records reveal that on October 13, 2016, Mr. Alverson was escorted to the health care unit emergency room at Staton.  Mr. Alverson had no

visible injuries and informed the LPN who saw Mr. Alverson that he did not know why he needed an assessment from the nurse.

On October 18, 2016, Mr. Alverson completed a sick call request stating that he was having problems with his back and that he could not move, walk or stand.

On October 20, 2016, Mr. Alverson was seen in the health care unit at Draper and evaluated by the LPN. Mr. Alverson complained of back pain in the middle of his back. The nurse noted that Mr. Alverson stated that his back hurt when he tried to stand up. Mr. Alverson stated that his back had been hurting for approximately two days.

A referral was made for Mr. Alverson to be seen in the emergency room on October 20, 2016. However, Mr. Alverson did not show up for his appointment on October 20, 2016.

On October 21, 2016, Mr. Alverson was seen by Domineek Guice, CRNP. Mr. Alverson complained he had back pain for approximately four days. Ms. Guice ordered x-rays on October 21, 2016.

X-rays of Mr. Alverson's cervical and lumbar spine were in fact taken on October 21, 2016. The results of those x-rays, as read by the radiologist, were as follows:

> CERVIAL SPINE 2 OR 3 VIEWS: RESULTS: There is anatomic alignment of the cervical vertebrae. The vertebral bodies show moderate degenerative osteophytic spurring. No fracture is seen, however. Posterior elements are intact. Occipitocervical junction is normal as is the C1-C2 relationship. No prevertebral soft tissue swelling or radiopaque foreign body is seen. CONCLUSION: Moderate degenerative changes of the cervical spine.
>
> THORACIC SPINE AP AND LAT: RESULTS: There is anatomic alignment of the thoracic vertebrae. The vertebral bodies show modest degenerative osteophytic spurring. No fracture is seen, however. CONCLSION: Modest osteoarthritis of the thoracic spine.
>
> LUMBAR SPINE AP AND LAT: RESULTS: There is anatomic alignment of the lumbar vertebrae. The vertebral bodies show moderate degenerative osteophytic spurring. No fracture or subluxation is seen, however. CONCLUSION: Moderate osteoarthritis of the lumbar spine.

I personally saw Mr. Alverson on October 25, 2016. Mr. Alverson informed me that his back had been hurting for approximately five days after he slept on steel

with no mattress.  I reviewed Mr. Alverson's x-rays that showed no problems besides mildly naturally occurring degenerative changes.

On October 25, 2016, I wrote restrictions for Mr. Alverson which included no prolonged standing for an excess of ten minutes.

On October 27, 2016, Mr. Alverson completed a sick call request stating that his neck was beginning to hurt and that it had gotten worse in the last two days.

An appointment was made for Mr. Alverson to be seen on October 31, 2016. However, Mr. Alverson refused to be seen at his sick call appointment.

On October 31, 2016, Mr. Alverson completed a medical grievance.  Mr. Alverson stated that he saw the doctor on October 25, 2016 and that his back and neck were hurting and that he was in need of a neck and back brace and special pillow.

Mr. Alverson was informed that when he was seen on October 25, 2016, he was given a bottom bunk profile and a profile of no prolonged standing.  Mr. Alverson was advised that if he still was having problems with back pain, that he was to sign up again for sick call.

On November 3, 2016, Mr. Alverson completed another sick call request. Mr. Alverson stated that his neck was still hurting and that he was experiencing pops in his neck that was constant.

Mr. Alverson was again seen by a nurse on October 9, 2016.  Mr. Alverson complained of constant aches and pain in his neck and back.  The nurse noted that the x-rays taken on October 21, 2016 were normal and non-problematic.  Mr. Alverson was given a prescription of Motrin 400 mg. for seven days.  Mr. Alverson was also provided with some analgesic balm.

On October 14, [2016], Mr. Alverson was written medical restrictions which included no prolonged standing for one month.

On December 5, 2016, a follow up appointment was made by the nurse for Mr. Alverson to be seen by the medical provider due to his ongoing back/neck pain.

Mr. Alverson was seen by the medical provider on [December] 20, 2016. An evaluation was made by the medical provider on December 20, 2016 of Mr. Alverson.  Mr. Alverson complained of pain in his neck for approximately two months.  The medical provider noted that the x-rays taken on October 21, 2016 indicated osteoarthritis.  The objective results showed that Mr. Alverson was suffering from musculoskeletal issues.  However, Mr. Alverson did not have any range-of-motion issues and was again prescribed Motrin and prednisone.

>There is nothing in Mr. Alverson's medical chart to indicate that he has at any time been denied or delayed necessary medical care for his medical needs.
>
>When Mr. Alverson complained of neck and back pain, a series of x-rays were taken, all of which were negative and only showed Mr. Alverson to suffer from mild osteoarthritis.
>
>There is nothing to indicate that Mr. Alverson did not receive appropriate nursing care/medical are for his medical needs.
>
>Mr. Alverson at all times received medications appropriate for his medical situation.

*Medical Defendants' Exh. A - Doc. No. 29-1* at 3-6. A thorough review of the evidentiary materials submitted by the medical defendants demonstrates that the material facts recited by defendant Oden are corroborated by the objective medical records contemporaneously complied during the provision of treatment to Alverson.

Turning to the first prerequisite for issuance of preliminary injunctive relief, the court finds that Alverson has failed to demonstrate a substantial likelihood of success on the merits of his claims involving medical treatment. Alverson likewise fails to establish a substantial threat that he will suffer the requisite irreparable injury absent issuance of a preliminary injunction. The third factor, balancing potential harm to the parties, weighs much more heavily in favor of the defendants as issuance of the requested injunction would impede the ability of health care personnel to exercise their professional medical judgment in determining the treatment which should be provided to Alverson and other inmates. Finally, the public interest element of the equation is, at best, a neutral factor at this juncture. Thus, Alverson has failed to meet his burden of demonstrating the existence of each prerequisite necessary to warrant issuance of a preliminary injunction.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for preliminary injunction filed by the plaintiff be DENIED.

2. This case be referred back to the undersigned for additional proceedings.

It is further ORDERED that on or before **February 17, 2017** the parties may file objections to the Recommendation. The plaintiff must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive or general objections addressed to the Recommendation will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the plaintiff to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 19th day of January, 2017.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE